**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **ROBIN HUGHES, as Mother and Next Friend and QUENTIN JOHNSON, as Father and Next Friend of DJ, a minor,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:19-cv-00905-MHL** |
| **HENRICO COUNTY PUBLIC SCHOOLS, *et al.*** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants School Board of Henrico County, Virginia (sued incorrectly as "Henrico County Public Schools," hereinafter "HCPS") and Thomas McAuley ("McAuley") state as follows in support of their Motion to Dismiss.[1]

### INTRODUCTION

The lawsuit arises out of an incident that occurred in the boy's locker room at Short Pump Middle School ("SPMS") after school and prior to football practice on October 13, 2017. Two white students performed simulated sexual acts on African American students while another student made digital recordings of what was occurring.  One of those white students then added vulgar and racist subtitles and voiceovers to the recordings and posted them on social media.

---

[1] HCPS and McAuley are collectively referred to as the "School Defendants." Upon information and belief, the other co-defendants, Scott Bowers ("Bowers") and John Doe ("Doe"), have not been served with process.

The parents of one of the African American students have brought this suit against HCPS, the then principal of SPMS, the putative Athletic Director of SPMS, and the then coach of the SPMS football team.  The legal claims asserted by the parents all rest on an alleged lack of supervision of the young men in the SPMS locker room at the time of the incident.  For the reasons set forth below, Defendants HCPS and McAuley request that this Court dismiss the claims brought against them with prejudice.

The Plaintiffs filed the original Complaint in the Circuit Court for the County of Henrico on October 15, 2019. The original Complaint was never served.  Instead, the Plaintiffs filed an Amended Complaint on October 18, 2019, without seeking leave to amend as required by Rule 1:8 of the Rules of the Supreme Court of Virginia. The Plaintiffs subsequently served the Amended Complaint on the School Defendants.  In light of the differences between Rule 1:8 of the Rules of the Supreme Court of Virginia and Rule 15 of the Federal Rules of Civil Procedure, the School Defendants respond to the Amended Complaint (hereinafter "Complaint"). The differences between the respective pleadings are minor and both pleadings fail to state any proper claim against the School Defendants for the reasons stated in this memorandum.

## FACTUAL ALLEGATIONS

Robin Hughes and Quentin Johnson, as the parents and next friends of DJ, a minor (the "Plaintiffs") filed this suit against the School Defendants. Compl. ¶¶ 1–3. At the time of the incident, DJ was a 12-year old seventh grader at SPMS and a member of the SPMS football team. *Id.* ¶ 7. The Plaintiffs allege that on October 13, 2017, two of DJ's teammates simulated sex acts on him and another African American student-athlete against their consent while uttering vulgar and racist taunts in the SPMS locker room before practice. *Id.* ¶¶ 16-21. The

teammates involved videotaped the incident, and subsequently added vulgar and racist subtitles and voiceovers to the videos before posting the videos on a social media site. *Id.* ¶ 24.

The Plaintiffs allege that after the videos became public, DJ was taunted and teased about the incident by fellow students. *Id.* ¶¶ 26–27. They also allege that the school environment became hostile and uncomfortable for DJ, and consequently, they requested a waiver to allow DJ to attend another school in Henrico County. *Id.* ¶ 28. HCPS granted the waiver. *Id.* ¶ 29.

The Complaint states that, approximately one week before the October 13, 2017 incident, SPMS officials, including McAuley, Bowers, and Doe, "were made aware of a racial incident" involving a white member of the SPMS football team. *Id.* ¶¶ 8–9. This prior incident allegedly occurred on October 4, 2017 in the locker room following a game. According to the Complaint, an altercation between a white player and an African American player occurred after the white player directed racial slurs at the African American members of the SPMS football team, including DJ. *Id.* ¶¶ 8–9 & 12. The Plaintiffs allege that Bowers informed DJ's father that "a meeting had been set up with the administration about the matter, and that during the meeting with the administration it was agreed that the SPMS football players were no longer allowed to be in the locker room without adult supervision." *Id.* ¶ 15. The Complaint does not identify who attended the meeting, who agreed that adult supervision was required, or who agreed to supervise the locker room.

The Complaint does not identify any incidents prior to October 13, 2017 other than the single October 4th incident, and the Plaintiffs do not allege that the School Defendants, Bowers, or Doe were aware of any other prior incidents. Likewise, the Complaint does not allege any ongoing incidents, taunting, or harassment even approximating, in nature or degree, the incident that occurred on October 13, 2017. Moreover, the Plaintiffs do not allege that the white student

involved in the alleged October 4th incident was involved in the October 13th incident or that he was still a member of the football team at that time.

At the time of the incident, McAuley was the principal of SPMS. *Id.* ¶ 3. In the caption, the Plaintiffs name McAuley in his official capacity as "principal of Short Pump Middle School and an employee of HCPS."[2] The Plaintiffs allege that McAuley was acting within the scope of his employment with HCPS at the time of the incident. *See, e.g.*, *id.* ¶¶ 37 & 47. The Plaintiffs further contend that HCPS is vicariously liable and responsible "under the doctrine of Respondeat Superior" for the actions or inactions of McAuley and the other co-defendants. *See, e.g.*, *id.* ¶ 38.

The Plaintiffs allege three counts against the School Defendants and their co-defendants. Counts I and III respectively allege that the School Defendants and their co-defendants were grossly negligent and negligent in their lack of supervision of the students in the SPMS locker room. *Id.* ¶¶ 31–38 & 49–52.

Count II is labeled "42 U.S.C. § 1983." Under this count, the Plaintiffs contend that the School Defendants violated "the constitutional rights guaranteed under the Fourteenth Amendment Equal Protection and Due Process Clauses of the U.S. Constitution and the Virginia Constitution of Plaintiff DJ and the other African American football players at SPMS." *Id.* ¶ 40.

The Plaintiffs do not allege anywhere in the Complaint that the School Defendants, Bowers, or Doe took any action against DJ, other than granting a requested waiver to attend another school after the incident. The Plaintiffs do not mention in the Complaint any custom,

---

[2] For the sake of comparison, the caption clearly names Bowers and Doe in their individual *and* official capacities.

policy, or practice of HCPS. They also do not allege that the School Defendants, Bowers, or Doe acted or failed to act with any invidious motivation.[3]

The Plaintiffs claim that DJ suffered extreme emotional distress, pain, suffering and inconvenience, lost FAPE, and incurred medical bills for treatment related to his injuries as a result of the October 13, 2017 incident, which the Plaintiffs contend resulted from the acts or inaction of McAuley, Bowers, and Doe, and HCPS. *Id.* ¶ 54. The Plaintiffs demand $350,000 in damages. *Id.*

## ARGUMENT

### I.    Standard of Review

The School Defendants bring this motion pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] To survive a motion to dismiss for the failure to state a claim upon which relief can be granted, the complaint must contain sufficient factual content to state a plausible claim, *i.e.*, one that allows the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint must allege facts sufficient "'to raise a right to relief above the speculative level,' thereby 'nudg[ing] the[] claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (first alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Although a court accepts the material facts

---

[3] The Complaint does not state where McAuley, Bowers, or Doe were during the incident, when the incident occurred during the day, or which, if any, of them should have been on school property, much less the locker room, at the time.

[4] Although sovereign immunity is jurisdictional under Virginia law, *Seabolt v. County of Albemarle*, 283 Va. 717, 719 (2012), federal courts typically review Virginia sovereign immunity arguments under Rule 12(b)(6). *See, e.g.*, *Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 705 (E.D. Va. 2019); *Brown v. Mitchell*, 308 F. Supp. 2d 682, 690 (E.D. Va. 2004).

alleged in the complaint as true, "statements of bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A pleading that offers only labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient. *Iqbal*, 556 U.S. at 678 (citation omitted). A court may rely on its judicial experience and common sense to determine whether a complaint states a plausible claim. *Id.* at 679.

II.     **The Complaint fails to articulate a § 1983 claim against either School Defendant.**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Complaint does not state a § 1983 claim against either School Defendant.

A.     The Plaintiffs fail to allege a violation of a Constitutional right.

1.     The Due Process clause does not mandate absolute protection from any unlawful touching.

The Plaintiffs do not allege the deprivation of a specific interest guaranteed by the Due Process Clause of the Fourteenth Amendment. Moreover, the Plaintiffs do not allege that government actors engaged in any affirmative or deliberate conduct that resulted in the alleged violation of DJ's rights. The Complaint identifies a single incident of physical harassment by two of DJ's teammates and a single, dissimilar prior incident involving another of DJ's teammates. Compl. ¶¶ 8–10 & 16–21.

The Complaint acknowledges that the School Defendants were not indifferent to the incidents. The School Defendants met to discuss and address the first incident and then were responsive to his parents' request to transfer schools. Complaint at ¶¶ 13–15 & 28–29.

The allegations in the Complaint place this case squarely within a line of cases holding that the failure of government officials "to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Sc. Servs.*, 489 U.S. 189, 197 (1989); *see Stevenson v. Martin County Bd. of Educ.*, 93 F. Supp. 2d 644, 648 (E.D.N.C. 1999), *aff'd* 3 Fed. Appx. 25, 31 (4th Cir. 2001) (dismissing due process claim based on the alleged deprivation of a student's liberty interest in bodily integrity and property interest in public education); *see also B.M.H. v. School Bd.*, 833 F. Supp. 560, 564-65 (E.D. Va. 1993) (finding as a matter of law that no "special relationship" existed between a student and the school officials that would support a section 1983 claim for deprivation of the Fourteenth Amendment liberty interest); *Shores v. Stafford County Sch. Bd.*, 2005 U.S. Dist. LEXIS 51469  at *7 (E.D. Va. 2005) (following *Stevenson*, 3 Fed. Appx. 25, and discussing the special relationship and state-created danger exceptions). Even if the School Defendants' response was delayed and ineffective, section 1983 does not make government actors liable for private harassment that they did not perpetrate.

> 2. The School Defendants did not violate the Equal Protection Clause.

The Plaintiffs also allege the School Defendants violated the Equal Protection Clause of the Fourteenth Amendment but fail to specify the nature of the alleged discrimination. Although the Fourth Circuit has recognized that "a victim of student-on-student sexual harassment can pursue an equal protection claim predicated on a school administrator's deliberate indifference to such harassment," *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018), the Plaintiffs fail to allege facts to make out such a claim.

To state such a claim, the Fourth Circuit explained that the plaintiff must allege: (1) discriminatory peer harassment; (2) that the school administrator responded with deliberate

indifference; *and* (3) that "the school administrator's deliberate indifference was motivated by a discriminatory intent." *Id.* at 702-03. To establish "deliberate indifference," the plaintiff must show that the school administrator "knew about the harassment of the plaintiff and acquiesced in that conduct by refusing to reasonably respond to it." *Id.* (internal quotation marks and citation omitted).

The Complaint contains only a single allegation of prior harassment relating to DJ, and it acknowledges that HCPS employees met *immediately* to discuss and address the October 4, 2017 incident. *Cf. id.* (explaining that the harassed UMW students alleged that the school president failed to respond *over a period of months*). The Complaint does not allege that McAuley and other HCPS employees took no action with respect to the white member of the team who allegedly directed the racial slurs at his African American teammates. Finally, there is no suggestion in the Complaint that the School Defendants' supervision of the locker room was motivated by a discriminatory intent. For these reasons, the Complaint fails to state a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment.

However, even if the Complaint stated a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment, McAuley would be entitled to qualified immunity.[5] The Fourth Circuit decided *Feminist Majority Foundation* in 2018; one year after the events that are the subject of the Complaint. When the Fourth Circuit decided *Feminist Majority Foundation*, it concluded that the equal protection right to be free from a school administrator's deliberate indifference to student-on-student harassment was not clearly established, and therefore, it found

---

[5] As discussed below, the School Defendants contend that the Plaintiffs named McAuley only in his official capacity. However, if the court determines that the Plaintiffs sued McAuley in his individual or supervisory capacity, the School Defendants contend that McAuley would be entitled to qualified immunity.

that the defendant administrator was entitled to qualified immunity. *Id.* at 706. Because the

Fourth Circuit's analysis and conclusion post-dates the events at issue, it cannot be said that any

of the individuals named as defendants were on notice that their conduct might violate the United

States Constitution. *See id.* at 704. Accordingly, McAuley is entitled to qualified immunity.

      B.  <u>The Complaint does not identify a policy, practice, or custom that violated section 1983.</u>

      Local government entities are subject to section 1983 liability for the unconstitutional

acts of their employees when the employee acts pursuant to a municipal policy, practice, or

custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A suit against a

government official in his official capacity is "treated as a suit against the entity, which must

then be a moving force behind the deprivation." *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir.

2016) (internal quotation marks and citation omitted). Accordingly, "the entity's policy or

custom must have played a part in the violation of federal law." *Id.* (internal quotation marks and

citation omitted).

      The Plaintiffs have not identified any HCPS policy, practice, or custom that led to any

violation of section 1983. The Plaintiffs broadly allege that the individual defendants had

specific knowledge about the alleged dangers present and failed to act.  Nowhere in the

Complaint, however, is the alleged failure to act tied to any HCPS or SPMS policy, and the

claims against HCPS and McAuley must fail for that reason.

      As set forth above, the School Defendants contend that the Plaintiffs named McAuley in

his official capacity. In an individual capacity suit, the plaintiff must "'show that the official,

acting under color of state law, caused the deprivation of a federal right.'" *King*, 825 F.3d at 223

(quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The Plaintiffs in this case have failed

to allege the deprivation of a federal right enforceable through section 1983, and they have also

failed to allege any specific action or omission by McAuley that purportedly caused the deprivation of a federal right.

In a supervisory capacity suit, the plaintiff must show "(1) [the supervisor] knew that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) [the supervisor's] response showed deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link' between [the supervisor's] inaction and the constitutional injury." *Id.* at 224 (internal quotations omitted). The first element requires a showing that the unlawful conduct is widespread or at least occurred on several different occasions. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The second element generally requires "demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks and citation omitted). Generally, a plaintiff cannot establish this element by identifying only a single incident or isolated incidents. *Id.*

The Complaint contains no allegations that would allow a court to make a reasonable inference that McAuley was aware of any conduct by his subordinates that could pose "a pervasive and unreasonable risk of constitutional injury." *King*, 825 F.3d at 224. Indeed, the Complaint contains little to no factual allegations describing unlawful conduct by any HCPS employees and fails to describe how McAuley's alleged inaction affirmatively facilitated or contributed to supposedly unlawful conduct by his subordinates. The Complaint identifies only two apparently isolated incidents of student-on-student harassment, and it does not contain any allegation that McAuley failed to respond to these incidents. For these reasons, the Plaintiffs have failed to state a claim against McAuley in either his individual or supervisory capacity.

C. <u>The Plaintiffs cannot pursue a section 1983 under a theory of *respondeat superior.*</u>

The doctrine of *respondeat superior* has "no application" under section 1983. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). The United States Supreme Court has concluded "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). This rule applies not only to government employers, but also to supervisors. *See, e.g.*, *Vinnedge*, 55 F.2d at 928 (dismissing denial of medical care claim against state administrative official).

A school board can only be held liable under section 1983 when the alleged injury is caused by execution of its policies or lack of training. *See id.* at 694; *City of Canton*, 489 U.S. at 388–89. The Plaintiffs at no point make any factual allegations that any purported constitutional violation was the result of the execution of policy or a lack of training. Therefore, the Plaintiffs have failed to state a claim under Count II against HCPS.

As discussed above, the Plaintiffs name McAuley in the caption of the Complaint only in his official capacity as "principal of Short Pump Middle School and an employee of HCPS." *See Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 608–09 (4th Cir. 1997) (explaining that courts should look to the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether an official is being sued in a personal capacity when  the plaintiff *fails* to allege capacity but look no further than the face of the complaint when capacity is expressly alleged). As such, the action against McAuley must be treated as a suit against HCPS. *See King*, 825 F.3d at 223. For this reason and the reasons previously stated, the Plaintiffs have also failed to state a claim under Count II against McAuley.

D.  The Plaintiffs cannot base a section 1983 claim on an alleged violation of the Individuals with Disabilities Education.

The Plaintiffs allege DJ was denied a free and appropriate public education under the Individuals with Disabilities Act. *See* Compl. ¶¶ 30 & 54. The Fourth Circuit has concluded that "parties may not sue under section 1983 for an IDEA violation." *Sellers v. School Bd.*, 141 F.3d 524, 529 (4th Cir. 1998); *see also A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 802–03 (3d Cir. 2007) (agreeing with the reasoning of the Fourth Circuit in *Sellers*). Accordingly, the Plaintiffs have failed to identify a statutory violation that can be remedied through section 1983.

**III.    The tort claims against the school defendants should be dismissed.**

The Plaintiffs have not pleaded facts to support their gross negligence or negligence claims.  HCPS is immune from all tort liability, and McAuley is immune from the claim of simple negligence.  The facts pleaded do not support the gross negligence claim against McAuley.

A.  HCPS has absolute immunity from tort claims.

HCPS, as a Virginia public school board, enjoys the same absolute immunity from tort claims as the Commonwealth did at common law. *See Kellam v. School Bd. of Norfolk*, 202 Va. 252, 254 (1960).  Although the Virginia Tort Claims Act modified the Commonwealth's sovereign immunity, it did not affect the immunity of Virginia public school boards. *See* Va. Code § 8.01-195.2 (2019). Accordingly, in the absence of a statute waiving its immunity under the circumstances, HCPS cannot be liable for any negligence or gross negligence whether on a theory of *respondeat superior* or otherwise. *See B.M.H. v. School Bd. of the City of Chesapeake*, 833 F. Supp. 560, 573 (E.D. Va. 1993); *Croghan v. Fairfax Cnty. Sch. Bd.*, 59 Va. Cir. 120, 121-22 (Fairfax County May 22, 2002). Therefore, the Plaintiffs have failed to state a claim against HCPS under Counts I and III of the Complaint.

12

B.  <u>McAuley is immune from a simple negligence claim.</u>

The Supreme Court of Virginia has previously held that a high-school principal is entitled to immunity from a claim for simple negligence. *See Burns v. Gagnon*, 283 Va. 657, 677 (2012); *Banks v. Sellers*, 224 Va. 168, 173 (1982) (holding that high school principal was entitled to immunity because of discretionary and managerial functions). The *Burns* Court set forth the "'four-factor test for determining whether an individual working for an immune governmental entity . . . is entitled to the protection of sovereign immunity.'"  *Burns*, 283 Va. at 676 (quoting *Friday-Spivey v. Collier*, 268 Va. 384, 387–88 (2004)) (alterations in original). The test considers: "'(1) the nature of the function the employee performs; (2) the extent of the governmental entity's interest and involvement in the function; (3) the degree of control and direction exercised by the governmental entity over the employee; and (4) whether the alleged wrongful act involved the exercise of judgment and discretion.'" *Id.* (quoting *Lentz v. Morris*, 236 Va. 78, 82 (1988)). The *Burns* Court also noted that there was no dispute that a high school principal's position satisfied the first three factors of the test. *Id.*

In the Amended Complaint, the Plaintiffs allege that McAuley had wide-ranging responsibilities for ensuring compliance with school policies, supervising school personnel, and hiring and firing employees. Compl. ⁋ 3.  Plainly, these responsibilities involve the exercise of judgment and discretion.  Moreover, none of the factual allegations contained in the Complaint materially distinguish this set of circumstances from those in *Burns* and *Banks*. *See also B.M.H.*, 833 F. Supp. at 574 (concluding that "sovereign immunity clearly bars any action against the Defendant teachers"). Nor is there any reason to believe that a middle school principal's duties are materially different than those of a high school principal for purposes of immunity analysis.

13

In light of the controlling precedent and the factual allegations in the Complaint, this Court can "rely on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, to conclude that McAuley is entitled to immunity. Therefore, the Plaintiffs have failed to state a claim against McAuley under Count III of the Complaint.

C.   The Plaintiffs have not established that Defendant McAuley had a duty.

"Negligence is not actionable unless there is a legal duty, a violation of the duty, and consequent damage." *Marshall v. Winston*, 239 Va. 315, 318 (1990) (citing *Fox v. Custis*, 236 Va. 69, 73–74 (1988)).  In Virginia, a person typically "does not have a duty to protect another from the conduct of third persons." *Burns,* 283 Va. at 668 (internal quotation marks and citations omitted). The Plaintiffs have failed to identify a duty that Defendant McAuley breached.

The only factual allegation in the Complaint that directly identifies Defendant McAuley states that McAuley became aware of a single instance of racial bullying and harassment one week before the incident giving rise to this lawsuit. *See* Compl. ⁋ 8. On the basis of this single fact, the Plaintiffs allege that McAuley was grossly negligent.

The Plaintiffs attempt to burden McAuley with a duty that plainly does not exist under Virginia law.  They assert that McAuley had a duty to "ensure the safety and well-being of Plaintiff DJ." Compl. ⁋ 32. But the Supreme Court of Virginia has spoken directly to this issue and found that "the supervising adult 'is not an *insurer* of the child's safety. Rather the supervising adult must discharge his or her duties as a reasonably prudent person would under similar circumstances'" *Burns*, 283 Va. at 671 (quoting *Kellerman v. McDonough*, 278 Va. 478, 487 (2009)) (emphasis added). The Plaintiffs are thus incorrect in attempting to place the heavy burden of ensuring or insuring the safety of all students at all times upon McAuley.

14

Moreover, the *Burns* Court names the "supervising adult" as the party that properly has the duty to use reasonable care in supervising and attending to a child. *Id.* The Plaintiffs do not allege that McAuley had any direct role in supervising DJ.  They do not allege any facts connecting McAuley to any failure to supervise football players.  Rather, the Plaintiffs have asserted little more than a theory of strict liability against a principal that is unsupported under Virginia law.

D.  <u>Defendant McAuley was not grossly negligent.</u>

To establish gross negligence, a plaintiff must show that the defendant conducted him or herself with an "utter disregard of prudence amounting to complete neglect of the safety of another." *Burns*, 283 Va. at 678 (internal quotation marks and citations omitted).  "It is such negligence as would shock fairminded people." *Stewart Title Guar. Co. v. Linowes & Blocher*, 1994 U.S. App. 34603, at * 9 (4th Cir. 1994) (citing *Frazier v. Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987)).

That a middle school principal was not present in the boy's locker room after school hardly evinces an utter disregard of prudence," and it certainly does not "shock fair minded people."  The Plaintiffs have not alleged any facts that link any action or inaction by McAuley to the vile conduct of certain football players.  They have failed to plead facts that plausibly show that they are entitled to recover.

WHEREFORE, the School Defendants ask that this Court grant their Motion to Dismiss.

Respectfully submitted,

SCHOOL BOARD OF HENRICO COUNTY,
VIRGINIA
and
THOMAS MCAULEY

15

By:   /s/_____
      John D. Gilbody, Esquire
      Assistant County Attorney
      VSB No. 42788
      Office of the County Attorney
      County of Henrico
      P.O. Box 90775
      Henrico, Virginia 23273-0775
      Telephone: (804) 501-4343
      Facsimile: (804) 501-4140
      Email: gil077@henrico.us

      *Attorney for Defendants School Board of
      Henrico County, Virginia and Thomas
      McAuley*

Joseph P. Rapisarda, Jr., VSB #14836
     County Attorney
John D. Gilbody, VSB #42788*
     Assistant County Attorney
Ryan P. Murphy, VSB #87843
     Assistant County Attorney
Office of the County Attorney
County of Henrico
P.O. Box 9077
Henrico, VA 23273-0775
Telephone: (804) 501-4342
Facsimile: (804) 501-4140
*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system. I will then send a copy of the document to counsel listed below via first class mail:

      Charlotte P. Hodges, Esq.
      B.I.G. Legal Services, PLLC
      P.O. Box 4302
      Midlothian, VA 23112
      *Counsel for Plaintiffs*

                        /s/_____
                             John D. Gilbody

16