**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **"DJ," A MINOR, BY AND THROUGH HIS NEXT FRIEND AND MOTHER, ROBIN HUGHES, AND HIS NEXT FRIEND AND FATHER, QUENTIN JOHNSON,** | ) <br> ) <br> ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| **v.** | ) **Case No. 3:19-cv-00905-MHL** <br> ) |
| **SCHOOL BOARD OF HENRICO COUNTY,** | ) <br> ) |
| **THOMAS MCAULEY,** | ) <br> ) |
| **SCOTT BOWERS, and** | ) <br> ) |
| **JOHN DOES 1-3,** | ) <br> ) |
| **Defendants.** | ) <br> ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM**

Defendants County School Board of Henrico County, Virginia ("School Board"), Thomas McAuley ("McAuley"), and Scott Bowers ("Bowers") (collectively the "School Defendants"), by counsel, state the following in support of their Motion to Dismiss the Amended Complaint for Failure to State a Claim.

**INTRODUCTION**

The lawsuit arises out of an incident that occurred in the boy's locker room at Short Pump Middle School ("SPMS") on October 13, 2017 (the "October 13th Incident"). Before football practice that day, two non-African American student-athletes performed simulated sexual acts on three African American student-athletes in the locker room. The acts were

1

recorded; vulgar and racist captions and voiceovers were added to the recordings; and the recordings were posted to social media.

One of the African American student-athletes (the "Plaintiff"), through his Next Friends and parents, filed this suit against the School Board, the then principal of SPMS (McAuley), the then coach of the SPMS football team (Bowers), and other unknown school employees, coaches, or persons. All the Plaintiff's legal claims are premised on an alleged lack of supervision of the boys in the SPMS locker room at the time of the incident and various forms of purported discrimination.

### SUMMARY OF ARGUMENT

Without question, the October 13th Incident involved wholly unacceptable racist and profane behavior by several members of the SPMS football team. However, the Plaintiff's allegations do not support legal claims for constitutional injuries, deliberate indifference, or negligence.  As a matter of law, the theories advanced by the Plaintiff do not render the School Defendant liable for the tortious actions of third parties.

To support the claims asserted in the Amended Complaint, the Plaintiff relies on broad, conclusory allegations of nonspecific incidents at SPMS prior to the October 13th Incident. The Amended Complaint, however, identifies only a single racial incident that occurred nine days before the October 13th Incident during which the Plaintiff heard a white student use a racial slur and witnessed a fight between that white student and an African American student. The Plaintiff was not involved in the fight.

That single prior incident did not provide notice to the School Defendants of any systemic racial, sexual, or disability-based peer-on-peer harassment or discrimination. Even so, and as the Plaintiff admits, the School Defendants responded immediately to that incident. When

the October 13th Incident occurred, it involved dramatically different behavior and other students. Nothing up to then had given any of the School Defendants notice that such behavior was likely or even possible.

As acknowledged in the Amended Complaint, following the October 13th Incident, the School Defendants investigated what occurred. The Plaintiff requested and received a waiver to attend a different school. Then the School Defendants held a community meeting on October 25, 2017 to hear and address the public's concerns.  In short, the School Defendants had no notice that anything like what occurred on October 13th was possible and acted swiftly upon learning what happened. For the reasons set forth below, the School Defendants request that this Court dismiss the case with prejudice.

## PROCEDURAL HISTORY

The Plaintiff, through his Next Friends and parents, filed the original Complaint in the Circuit Court for the County of Henrico on October 15, 2019. The School Board was served on November 8, 2019, and McAuley was served on November 15, 2019. On December 5, 2019, the School Board and McAuley removed the case to the United States District Court for the Eastern District of Virginia, Richmond Division.

On December 11, 2019, the School Board and McAuley filed a Motion to Dismiss. In response, on December 24, 2019, the Plaintiff filed an Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a). Bowers was served on December 30, 2019, and Bowers consents to the removal of this action to this Court.

On January 2, 2020, the Court granted the School Board's and McAuley's Motion for Extension of Time providing until January 17, 2020 to file a response to the Amended

Complaint. Now, the School Defendants file their Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### FACTUAL ALLEGATIONS

At the time of the incident, the Plaintiff was a 12-year old seventh grader at SPMS and a member of the SPMS football team.  Am. Compl. ¶ 1, ECF No. 7.  The Plaintiff alleges that on October 13, 2017, two of the Plaintiff's non-African American teammates simulated sex acts on him and two other African American student-athletes against their consent while uttering vulgar and racist taunts in the SPMS locker room before football practice. *Id.* at ¶¶ 1, 26–31, 101–02, 115–16. The student-athletes involved videotaped the incident and subsequently added vulgar and racist captions and voiceovers to the videos before posting the video on a social media site. *Id.* at ¶¶ 1, 104, 118.

After the video became public, the Plaintiff generally alleges that he was taunted and teased about the incident by fellow students.  *Id.* at ¶¶ 3, 36, 39, 67, 78. The Plaintiff contends that Bowers "minimize[d]" the incident and that Plaintiff "felt contempt" from his non-African American teammates.  *Id.* at ¶ 37.  The Amended Complaint also offers a conclusory allegation that the school environment became hostile and uncomfortable for him, and consequently, his parents requested a waiver to allow him to attend another school in Henrico County.  *Id.* at ¶ 40; *see also id.* at ¶ 68. The School Board granted the waiver.  *Id.* at ¶ 41.  However, the Amended Complaint contains no specific allegations of harassment or bullying after the October 13th incident. Further, the Plaintiff does not identify any SPMS officials or employees who witnessed the alleged taunting. Rather, the Plaintiff alleges that harassment occurred in "plain view" of teachers and staff.  *Id.* at ¶ 3.

The Amended Complaint alleges that approximately one week before the October 13th Incident, SPMS officials, including McAuley and Bowers, "were made aware of a racial incident" involving a white member of the SPMS football team. *Id.* at ¶ 17; *see also id.* at ¶¶ 2, 18, 20, 22–23, 72, 97–98, 111–12. This prior incident allegedly occurred on October 4, 2017 in the locker room following a game and involved a fight between a white student-athlete and an African American student-athlete after the white student-athlete directed a racial slur at the African American members of the team, including the Plaintiff (the "October 4th Incident"). *Id.* at ¶¶ 2, 17–18, 20, 22–23, 72, 97–98, 111–12. The Plaintiff was not involved in the altercation. *Id.* at ¶ 21.

The Amended Complaint further alleges that, on October 5, 2017, Bowers informed the Plaintiff's father that he "had taken action" and that "a meeting had been set up with the SPMS administration, including the principal about the matter." *Id.* at ¶ 23; *see also id.* at ¶¶ 98–99, 112–13. The Plaintiff alleges that during the meeting among SPMS administrators "it was agreed that the SPMS football players were no longer allowed to be in the locker room without adult supervision." Bowers allegedly informed the Plaintiff's father that an administrator or coach would supervise the locker room at all times. *Id.* at ¶ 24, 50, 99, 113. The Plaintiff does not allege that the white student involved in the October 4th Incident was involved in the October 13th Incident or that he was even still a member of the football team at that time.

Although the Amended Complaint generally refers to allegations of prior discrimination and harassment at SPMS and other schools in Henrico County, the Plaintiff does not specifically identify any incidents prior to the October 13th Incident other than the October 4th Incident. *Id.* at ¶¶ 45–46. Similarly, the Amended Complaint generally alleges that the School Defendants had been warned of racial tensions between members of the football team. *Id.* at ¶ 2. But the

Plaintiff does not identify any specific communications before the October 13th Incident except in connection with the October 4th Incident, and he does not allege that he directly experienced or observed any prior racial, sexual, or other discriminatory incidents other than the October 4th Incident. Nothing in the Amended Complaint indicates that any events were in any way motivated by the Plaintiff's alleged disability.

With the exception of the October 4th Incident, the Plaintiff does not identify any prior discriminatory incidents of which McAuley, Bowers, or the School Board were aware. Further, the Amended Complaint contains no indication that there had been any issues in the locker room, except for the October 4th Incident.

The Plaintiff alleges that McAuley and the School Board were aware of unidentified prior incidents at SPMS, but the Plaintiff also concedes that these incidents were apparently addressed on a case-by-case basis. *Id.* at ¶ 47. Again, the Amended Complaint provides no indication of the nature of these alleged incidents, their alleged frequency, alleged severity, or alleged scope at SPMS or at Henrico County Public Schools as a whole. In short, as discussed below, the Plaintiff asks this Court to infer constitutional and statutory injuries based on bare assertions grafted into the Amended Complaint from a community meeting that occurred after the October 13th incident.

At the time of the October 4th Incident and the October 13th Incident, McAuley was the principal of SPMS and Bowers was the coach of the SPMS football team. *Id.* at ¶¶ 13-14. The School Board is the policymaking body that directs and oversees Henrico County Public Schools. *Id.* at ¶ 12.

The Amended Complaint contains seven counts. Count I is against Bowers, and the Plaintiff alleges a Section 1983 violation premised on the Fourteenth Amendment substantive

due process right to bodily integrity. *Id.* at ¶¶ 48–55. Count II is against Bowers and McAuley, and the Plaintiff alleges a Section 1983 violation for supervisory liability under the Fourteenth Amendment. *Id.* at ¶¶ 56–63. Counts III, IV, and V are directed at the School Board and allege violations of Title VI, Title IX, and Section 504 of the Vocational Rehabilitation Act, respectively. *Id.* at ¶¶ 64–93. Finally, in Counts VI and VII, the Plaintiff alleges state negligence claims against McAuley, Bowers, and John Does 1–3. *Id.* at ¶¶ 94–120.

## STANDARD OF REVIEW

The School Defendants bring this motion pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for the failure to state a claim upon which relief can be granted, the complaint must contain sufficient factual content to state a plausible claim, i.e., one that allows the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To determine whether a complaint states a plausible claim, the reviewing court considers context, and draws on its experience and common sense. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Conclusory allegations are not entitled to the assumption of truth. *Ashcroft*, 556 U.S. at 663–64. Similarly, courts "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft*, 556 U.S. at 678 (citation omitted). "[N]aked assertions of wrongdoing" require further "factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d

186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (quotations omitted).  Accordingly,

the complaint must allege sufficient factual material "to raise a right to relief above the

speculative level, thereby nudg[ing] the[] claims across the line from conceivable to plausible."

*Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (first alteration in original) (quotations

omitted) (quoting *Twombly*, 550 U.S. at 555, 570).

## ARGUMENT

**I.      The Plaintiff has failed to allege facts establishing the violation of a constitutional right.**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988)

(citations omitted).  Counts I and II of the Amended Complaint fail to allege facts sufficient to

plausibly state a claim for the violation of a constitutional right and should be dismissed.

### A.      The Due Process Clause is not a guarantee of protection against private tortious acts.

In Count I of the Amended Complaint, the Plaintiff alleges that Defendant Bowers

violated the Plaintiff's substantive due process right to bodily integrity that is guaranteed by the

Fourteenth Amendment.  Am. Compl. ¶ 49.  The Plaintiff does not allege that Bowers engaged in

any affirmative or deliberate conduct that resulted in the alleged violation of this substantive due

process right. Rather, the Amended Complaint describes, at most, an omission or failure to act by

Bowers. Despite artful recharacterization, the Plaintiff cannot avoid the fact that the only

affirmative acts alleged were committed by private actors not party to this suit.

The failure of government officials "to protect an individual against private violence

simply does not constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago Cty.*

*Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  There are two limited exceptions to the general rule of *DeShaney*: (1) the "special relationship" doctrine and (2) the "state-created danger" doctrine.  *Doe v. Rosa*, 795 F.3d 429, 437-38 (4th Cir. 2015).  The Amended Complaint explicitly relies on the state-created danger exception, likely because the first exception is clearly not applicable.  *See Stevenson v. Martin Cty. Bd. of Educ.*, 3 F. App'x 25, 31 (4th Cir. 2001) ("Following the lead of our sister circuits, we hold that the Martin County School officials did not have a 'special relationship' with [plaintiff student] that triggered the protections of the Due Process Clause in this case.").

Under the state-created danger doctrine, a government actor may be held liable only "for harm resulting from 'affirmative actions' that created or enhanced the dangerous conditions that produced the plaintiff's injury."  *Turner*, 930 F.3d at 645 (citation omitted).  "[A] plaintiff must show that the [government] actor created or increased the risk of private danger, and did so *directly* through affirmative acts, not merely through inaction or omissions."  *Id.* (quoting *Rosa*, 795 F.3d at 439) (emphasis added).  "[T]he bar for what constitutes an affirmative act is high." *Id.* (quotations and citation omitted).  Indeed, the Fourth Circuit has "never issued a published opinion recognizing a successful state-created danger claim."  *Id*. at 646.

The leading case in the Fourth Circuit on the state-created danger doctrine is *Pinder v. Johnson*, 54 F.3d 1169 (4th Cir. 1995) (en banc).  *See Rosa*, 795 F.3d at 438.  In *Pinder*, the defendant police officer responded to Pinder's home because of a domestic disturbance involving Pinder and her former boyfriend.  *See* 54 F.3d at 1172.  Pinder told the officer that her former boyfriend had broken into her home and attacked her. She further explained that he had threatened her in the past and that he had just been released from prison after being convicted of attempted arson of her home ten months earlier. When the officer arrested the former boyfriend,

Pinder asked if it would be safe for her to return to work that evening and leave her children at home. The officer assured her that the former boyfriend would be detained overnight. Based on these assurances, Pinder returned to work and left her children at home. However, the officer only charged the former boyfriend with misdemeanors and he was released that night. He returned to Pinder's home and set fire to it, killing Pinder's children.  *Id.*

Sitting en banc, the Fourth Circuit reversed the district court's denial of the officer's motion for summary judgment. The *Pinder* Court found that "[n]o court had actually found a due process right to protection from third parties based on mere assurances by state officials." *Id.* at 1176.  The *Pinder* Court further explained that none of the cases recognizing a duty on the behalf of government actors to protect individuals from the actions of other private individuals "found a particularized due process right to affirmative protection based solely on an official's assurances that the danger posed by a third party will be eliminated." *Id.*

The *Pinder* Court rejected the plaintiff's attempt to characterize the assurances made by the officer and his decision to charge the former boyfriend with misdemeanors as "affirmative" conduct. The Court stated without equivocation that the case against the officer was "purely an omission claim." *Id.*  It then explained that "[i]t cannot be that the [government] 'commits an affirmative act' or 'creates a danger' every time it does anything that makes injury at the hands of a third party more likely." *Id.* at 1175.

The Plaintiff suggests that Bowers, among others, created a danger by requiring student-athletes to change into tackle football equipment.  This requirement, the Plaintiff alleges without elaboration, placed DJ in a "vulnerable position."  Am. Compl. ¶ 25.  It is unclear, however, how Bowers "created" or "increased" the alleged danger of peer-on-peer harassment by requiring that student-athletes practicing for tackle football wear safety equipment for tackle football.

10

Certainly, this Court can exercise its "common sense" to determine that requiring student-athletes to wear safety equipment critical to playing football does not constitute an "affirmative act." *Twombly*, 550 U.S. at 556; *cf. Pinder*, 54 F.3d at 1175 ("No amount of semantics can disguise the fact that the real 'affirmative act' here was committed by [the former boyfriend], not by Officer Johnson."). The affirmative acts that caused harm to the Plaintiff were committed by other student-athletes, not Bowers. Moreover, the Plaintiff does not allege that the student-athletes were required to change into this equipment in the locker room instead of another location.

The Plaintiff also alleges that Bowers assured Mr. Johnson that the SPMS football team would be supervised in the locker room and that the team was subsequently left unsupervised. These allegations are legally indistinguishable from the facts of *Pinder*. As in *Pinder*, the Plaintiff alleges that assurances were given and relied upon. The assurances could not support a § 1983 claim in *Pinder* and cannot do so in this case.

Furthermore, in the context of peer-on-peer harassment in schools, circuit courts have required plaintiffs to show that school officials acted with deliberate indifference to establish liability. *See Stevenson*, 3 F. App'x at 32 (citations omitted). School officials "must engage in intentional or reckless affirmative conduct that shocks the conscience of federal judges." *Id.*; *see also D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015). The Amended Complaint acknowledges that Bowers informed the Plaintiff's father that he responded to the first incident, and the Plaintiff does not dispute this fact. *See* Am. Compl. ¶ 23–24.

The Plaintiff does not allege that Bowers took no disciplinary action with respect to the white student-athlete involved in the October 4th Incident. The Plaintiff does not allege that the non-African American student-athletes involved in the October 13th Incident were known (by

anyone) to have been involved in prior incidents of this nature. None of the facts alleged in the Amended Complaint leads to the inference that Bowers or any other school official knew or should have known that the perpetrators of the October 13th Incident were of particular danger to the Plaintiff.

Likewise, the Plaintiff does not allege Bowers did anything to instigate the October 13th Incident. In other words, Bowers did not intentionally or recklessly contribute to the violence. To the extent the Plaintiff alleges that Bowers' actions were ineffective, such an allegation would be insufficient "to trigger constitutional liability." *See Stevenson*, 3 F. App'x at 32.  None of the facts alleged in the Amended Complaint pertaining to Bowers' conduct shocks the judicial conscience.

For all these reasons, the Court should dismiss Count I.

**B.     There is no basis for supervisory liability under Section 1983.**

In Count II of the Amended Complaint, the Plaintiff alleges that Defendants Bowers and McAuley violated his Fourteenth Amendment rights.  The Plaintiff seeks recovery under a theory of supervisory liability premised upon the alleged deliberate indifference of Bowers and McAuley to their subordinates' actions that allegedly posed an unreasonable and pervasive risk of injury to students, including the Plaintiff.  Am. Compl. ¶¶ 57–60.  The only difference between Count I and Count II is that the alleged cause of purported constitutional injury under Count II is a purported omission by some unnamed subordinates.

Pursuant to a theory of Section 1983 liability known as "supervisory liability," supervisors "may be held liable . . . for the constitutional injuries inflicted by their subordinates." *Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 630 (4th Cir. 2002) (citations

omitted).  A plaintiff must plead sufficient facts to state a plausible basis for three elements
necessary to establish supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was
> engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional
> injury to citizens like the plaintiff; (2) that the supervisor's response to that
> knowledge was so inadequate as to show 'deliberate indifference to or tacit
> authorization of the alleged offensive practices,' and (3) that there was an
> 'affirmative causal link' between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).  The Plaintiff cannot satisfy
any of these elements.

The first element requires a plaintiff to show the supervisor's knowledge of conduct
engaged in by a subordinate that poses a pervasive and unreasonable risk of constitutional injury
to the plaintiff.  *Id.*  The plaintiff must allege facts plausibly indicating that the offensive
"conduct is widespread, or at least has been used on several different occasions and that the
conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional
injury."  *Id.* (citing *Slakan v. Porter*, 737 F.2d 368, 373–74 (4th Cir. 1984)); *see also Costine v.
Correct Care Sols., LLC*, No. 2:19cv53, 2019 U.S. Dist. LEXIS 110916, at *11 (E.D. Va. July 2,
2019) (*citing Randall v. Prince George's Cty.*, 302 F.3d 188, 206 (4th Cir. 2002)) (granting
12(b)(6) dismissal in § 1983 supervisory liability claim when the plaintiff alleged only two
similar previous incidents).  The Plaintiff does not come close to pleading facts sufficient to
satisfy this element.

The Plaintiff alleges that both Defendants Bowers and McAuley "had actual or
constructive knowledge" that their subordinates "were engaged in conduct that posed a pervasive
and unreasonable risk of injury to students such as DJ by leaving them unsupervised in the locker
room."  Am. Compl. ¶¶ 58–59.  These conclusory statements are precisely the type of

unsupported allegations that courts may not credit as true without further factual support. *See Ashcroft*, 556 U.S. at 663–64. The only specific allegation on point is that on *one occasion* prior to October 13, 2017, the boy's locker room was left unsupervised and two students got into a fight after a racial slur was uttered. Am. Compl. ¶ 18-19. This single incident does not support even an inference that there was a pervasive problem — much less that Bowers and McAuley knew or should have known of a pervasive problem.

The second element requires a plaintiff to demonstrate the supervisor's "continued inaction in the face of documented widespread abuses." *Stroud*, 13 F.3d at 799 (citing *Slakan*, 737 F.2d at 373). Typically, a plaintiff cannot satisfy this element "by pointing to a single incident or isolated incidents." *Id.* (citing *Slakan*, 737 F.2d at 372–73). But that is exactly what the Plaintiff has done. The Plaintiff points to a single incident and asks this Court to infer "widespread abuses" without providing any plausible factual basis in support. Moreover, the Plaintiff's allegations contradict the other component of this element.

The Plaintiff alleges that following the October 4th Incident, Bowers corresponded with the Plaintiff's father and set up a meeting with SPMS administrators. Am. Compl. ¶ 23. During that meeting, the Plaintiff alleges, "it was agreed and determined that the SPMS football players were no longer allowed to be in the locker room without adult supervision." *Id.* at ¶ 24. Bowers and McAuley did not fail to act. Even if the decision to require constant supervision of the locker room was not successfully implemented, it demonstrated sufficient diligence to overcome a claim of deliberate indifference. *See Stroud*, 13 F.3d at 801 ("Although [defendant supervisor]'s actions may not have been the most effective and although he might have done more, such a rule is not the standard by which we judge [the supervisor]'s conduct.").

14

Finally, the Plaintiff has not established an "affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* at 799 (quotations and citations omitted). An "affirmative causal link" is based on the concepts of cause in fact and proximate cause. *Id.* In other words, a supervisor is liable only "for the natural consequences of his actions." *Id.* (quoting *Slakan*, 737 F.2d at 376).

The Amended Complaint does not allege that either Bowers or McAuley had any basis to anticipate that their subordinates would fail to supervise the boy's locker room after "it was agreed and determined that the SPMS football players were no longer allowed to be in the locker room without adult supervision." Am. Compl. ¶ 24. The Plaintiff does not allege that Bowers or McAuley told their subordinates not to supervise the locker room or that Bowers or McAuley failed to tell their subordinates to supervise the locker room. In short, the Plaintiff fails to allege any facts linking the action or inaction of Bowers and McAuley to the failure of the subordinates to supervise the locker room.

Lastly, the Plaintiff's supervisory liability claim also fails because the Plaintiff has not demonstrated a constitutional injury pursuant to the Due Process Clause of the Fourteenth Amendment. *See Tigrett*, 290 F.3d at 630–31. The Plaintiff does not identify any "affirmative act" of a state actor subordinate of Bowers or McAuley as required to successfully invoke the state-created danger exception, and the special relationship exception does not apply. Rather, the Plaintiff relies entirely on purported omissions by the unidentified subordinates. Accordingly, the Amended Complaint fails to allege a violation of the Plaintiff's substantive due process rights by a subordinate of Bowers or McAuley and Count II should be dismissed.

**II.     The Plaintiff failed to allege facts establishing a basis for imputing liability for the Title VI and Title IX discrimination claims.**

Counts III and IV of the Amended Complaint assert deliberate indifference claims against the School Board pursuant to Title VI and Title IX, respectively. Title VI authorizes a private cause of action only for intentional discrimination based on race, color, or national origin. *See Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 70 (1992). Title VI "is parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs. The two statues operate in the same manner." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). Accordingly, the deliberate indifference standard under Title VI and Title IX is the same. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649 (1999).

Under Title VI and Title IX, a private action for damages will lie "only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Id.* at 633. In addition, to recover the Plaintiff must allege "harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.* Thus, to prevail under either his Title VI or Title IX claim, the Plaintiff must show that the School Board (1) had actual knowledge, (2) was deliberately indifferent, and (3) denied the Plaintiff of an educational opportunity or benefit. *Id.* at 633, 642.

**A.  The School Board did not have actual notice of any harassment other than the October 13th Incident.**

**1.  The Plaintiff has not alleged facts showing actual notice by the School Board of ongoing racial or sexual harassment prior to the October 13th Incident.**

To establish actual knowledge, it is not enough for the Plaintiff to allege generally that sexual or racial harassment was rampant. The Plaintiff must show that the harassment was "plaintiff specific." *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 639 (W.D. Va. 2016) (citing *Baynard v. Malone*, 268 F.3d 228, 237-38 (4th Cir. 2001)) ("In the Fourth Circuit, though, there is a requirement that the defendant have actual notice of harassment against the plaintiff.").

The Plaintiff has not alleged that he suffered any sexual harassment prior to the October 13th Incident. The sole allegation of racial harassment involving the Plaintiff prior to October 13, 2017, was the October 4th Incident where a racial slur was allegedly directed at the Plaintiff. Am. Compl. ¶ 18. The Plaintiff was not involved in the physical altercation. *Id.* As detailed above, Bowers and SPMS administrators responded to this incident.  The Plaintiff has not alleged that the School Board was specifically apprised of this single incident.  Rather, the Plaintiff makes only the conclusory allegation that "the School Board [was] aware of the racially-motivated fight in the locker room." *Id.* at ¶ 72.

**2.  The Plaintiff has not alleged that the School Board had actual knowledge of any harassment after October 13, 2017.**

The Plaintiffs did not allege *any* specific facts showing that the School Board was made aware of harassment directed at the Plaintiff after the October 13th Incident. The Plaintiff complains of racial and sexual harassment for "several days after the October 13, 2017 [I]ncident. *Id.* at ¶ 3, 39.  The Plaintiff does not, however, allege any facts to suggest that the

17

School Board was aware of the alleged harassment occurring after the October 13th Incident. The Plaintiff states only that the alleged harassment occurred in the "hallways of SPMS, in plain view of teachers and other SPMS staff." *Id.* at ¶ 3. These allegations are insufficient to establish "actual knowledge" under Title VI or Title IX.

The Plaintiff must plead and prove actual knowledge to recover under Title VI and Title IX. *See Gebser*, 524 U.S. at 288 ("Congress did not intend to allow recovery in damages where liability rests solely on principles of vicarious liability or constructive notice."). The premise of a School Board's liability "is an official decision by the recipient not to remedy the violation." *Id.* at 290. To prevail, the Plaintiff must show that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* The Plaintiff has failed to show that any official with such authority had actual knowledge of harassment directed at the Plaintiff subsequent to October 13, 2017. Accordingly, the Plaintiff has alleged no basis for liability under Title VI or Title IX.

**B.    The School Board was not deliberately indifferent.**

The deliberate indifference standard outlined by the Supreme Court in *Davis* is a narrow one. *See* 526 U.S. at 644-45 (Title IX "cabins the range of misconduct" prohibited, and a school district's liability is limited). "[A] showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citation omitted).

The Plaintiff has failed to allege facts sufficient to create the plausible inference that the School Board made a decision to remain idle in the face of known student-on-student harassment or that there was no attempt to remedy such harassment. To the contrary, the facts alleged by the

18

Plaintiff demonstrate that the School Board was not deliberately indifferent to incidents of discrimination.

In response to the October 4th Incident, the Plaintiff acknowledges that Bowers set up a meeting about the matter. Am. Compl. ¶ 23. The Plaintiff further acknowledged that SPMS administrators decided that student-athletes would be supervised in the locker room. Similarly, after the October 13th Incident, the Plaintiff acknowledges that school administrators "spoke to . . . the football team about the incident" and that a community meeting was held. *Id.* at ¶ 38. The Plaintiff has acknowledged that his parents requested a waiver that would allow him to attend another school in Henrico County, and that request was granted. Am. Compl. ¶¶ 40–41.

None of the alleged responses to the incidents were clearly unreasonable. As the Court highlighted in *Facchetti,* Title IX claims surviving dismissal typically "involve[] allegations of complete inaction[s] in the face of [ ] harassment." *Facchetti*, 175 F. Supp. 3d at 638. In analyzing whether the plaintiff adequately pleaded a claim of deliberate indifference, the Court explained that, "although Facchetti alleges in conclusory fashion that Bridgewater attempted to protect the school's reputation and sweep the incident under the rug, she also alleges that Bridgewater interviewed Vest immediately, received his confession, and took action against him, including a suspension." *Id.* at 639. The Court found that even if negligent, the actions were not clearly unreasonable and insufficient to support a claim of deliberate indifference. *Id.* Borrowing from the Court's language in *Facchetti*, here the "allegations of deliberate indifference pale in comparison to other cases where a plaintiff's Title IX claim has survived dismissal." *Id.* at 638 (citing *Jennings v. Univ. of N.C.*, 482 F.3d 686, 701 (4th Cir. 2007) (en banc); *Rex v. W. Va. Sch. of Osteopathic Med.*, 119 F. Supp. 3d 542, 551 (S.D. W. Va. 2015)).

19

**C.    The Plaintiffs have not established the denial of an educational benefit.**

The Plaintiffs have not pleaded facts sufficient to support their claim that the School Board denied the Plaintiff educational opportunities or benefits. The Fourth Circuit has explained that "the burden of showing a concrete, negative effect is sufficiently rigorous. It is, in simple terms, an effect that is concrete (or real), negative, and substantial." *Jennings*, 482 F.3d at 699.

Although the Plaintiff has alleged harm, he has failed to connect this harm to the denial of an educational benefit.  The Plaintiff has acknowledged that upon requesting a waiver to attend a new school, the waiver was granted.  The Plaintiff did not allege that the harassment resulted in the physical exclusion from an educational program or activity or provided any facts to support a conclusion that the Plaintiff was effectively denied equal access to the division's resources and opportunities. Instead the Plaintiff makes conclusory allegations such as, "[t]he discrimination and harassment were so severe and objectively offensive so as to create a hostile environment and bar DJ's access to educational opportunities and benefits." Am. Compl. ¶¶ 68, 79, 89.  The Plaintiff's recitation of generalized harms and legal conclusions do not plausibly show he has been denied an educational benefit or opportunity.

**III.    The Plaintiff's claims under Section 504 of the Vocational Rehabilitation Act fail.**

In Count V of the Amended Complaint, the Plaintiff alleges that the School Board violated section 504 of the Vocational Rehabilitation Act. To recover, the Plaintiff must allege facts showing that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, *on the basis of his disability.  Baird v. Rose*, 192 F.3d 462, 467–70 (4th Cir. 1999); *Doe v. Univ. of Md. Med.*

*Sys. Corp.*, 50 F.3d 1261, 1264–65, 1265 n.9 (4th Cir. 1995). The Amended Complaint does not

include any facts even suggesting that the Plaintiff's alleged disability played any role in the

alleged bullying and harassment.  Indeed, the Plaintiff does not even allege that any of the

students that assaulted and harassed him knew that he had an Individual Education Plan or a

disability. Likewise, the Plaintiff has not alleged that any Defendant failed to address the assault

and harassment because of the Plaintiff's alleged disability.

Count V of the Amended Complaint should be dismissed.

## IV.     The Plaintiff has not identified a legal duty and the state law tort claims should be dismissed.

In Counts VI and VII, the Plaintiff alleges that Bowers, McAuley, and John Does 1–3

were grossly negligent and willfully and wantonly negligent.  Am. Compl. ¶¶ 94–120.

"Negligence is not actionable unless there is a legal duty, a violation of the duty, and consequent

damage." *Marshall v. Winston*, 239 Va. 315, 318 (1990) (citing *Fox v. Custis*, 236 Va. 69, 73-74

(1988)).  Determining whether a duty of care exists is "a pure question of law." *Yuzefovsky v. St.

John's Wood Apts.*, 261 Va. 97, 106 (2001) (quoting *Burns v. Johnson*, 250 Va. 41, 45 (1995)).

In Virginia, a person typically "does not have a duty to protect another from the conduct of third

persons." *Burns v. Gagnon,* 283 Va. 657, 668 (2012) (quotations and citations omitted).  The

Plaintiff has failed to identify a legal duty that Bowers or McAuley breached.

In the Amended Complaint, the Plaintiff alleges that Bowers and McAuley had a duty to

"exercise reasonable care with regard to DJ and other SPMS children."  Am. Compl. ¶¶ 95, 109.

Under Virginia law, no generalized legal duty to use "exercise reasonable care with regard" to

students exists. The Plaintiff has not alleged that either Bowers or McAuley committed any

tortious act.  Rather, the Plaintiff suggests that alleged "indifference" constitutes a tort under

Virginia law.  *See* Am. Compl. ¶¶ 105, 119.  It does not.

It is axiomatic that "[a]n action for negligence only lies where there has been failure to perform some legal duty which the defendant owes to the party injured." *RGR, LLC v. Settle*, 288 Va. 260, 275 (2014) (*citing Balderson v. Robertson*, 203 Va. 484, 487–88 (1962)).  Since the Plaintiff has failed to identify a legal duty under Virginia law, the Plaintiff's tort claims (Counts VI & VII) should be dismissed.

## CONCLUSION

The School Defendants took no actions that harmed the Plaintiff and did not have notice of ongoing peer-on-peer harassment prior to the October 13th Incident. After the incident, the School Defendants took immediate action, including granting the Plaintiff's waiver request.

WHEREFORE, the School Defendants ask that this Court grant their Motion to Dismiss the Amended Complaint for Failure to State a Claim and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

SCHOOL BOARD OF HENRICO COUNTY,
THOMAS MCAULEY & SCOTT BOWERS

By:     /s/_____
        John D. Gilbody

Joseph P. Rapisarda, Jr., VSB #14836
    County Attorney
John D. Gilbody, VSB #42788
    Assistant County Attorney
Ryan P. Murphy, VSB #87843
    Assistant County Attorney
Office of the County Attorney
Henrico County
P.O. Box 90775
Henrico, VA 23273-0775
Telephone: (804) 501-4342
Facsimile: (804) 501-4140

*Attorney for Defendants*
*School Board of Henrico County,*
*Thomas McAuley, and Scott Bowers*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17th, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to the following:

Charlotte P. Hodges, Esq.
B.I.G. Legal Services, PLLC
P.O. Box 4302
Midlothian, VA 23112

Mark J. Krudys, Esquire
The Krudys Law Firm
919 East Main Street, Suite 2020
Richmond, VA   23219

/s/_____
John D. Gilbody